UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VOEUTH CHETH, | Case No. 2:15-cv-00248-RAJ-KLS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | Noted for December 4, 2015 |
| Defendant. | |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned recommends that for the reasons set forth below, the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 16, 2009, plaintiff filed an application for SSI benefits, alleging disability as of November 5, 1999. *See* Dkt. 9, Administrative Record 342. The Commissioner denied that

REPORT AND RECOMMENDATION - 1

application on initial administrative review on January 7, 2010, and on reconsideration on April 28, 2010. *See id.* On May 10, 2011, plaintiff appeared and testified at a hearing before an administrative law judge, and in a decision dated May 27, 2011, the ALJ determined plaintiff to be not disabled. *See id*. Plaintiff appealed that decision to this Court, which remanded the matter to the Commissioner for further administrative proceedings. *See id*.

At a second hearing before the same ALJ on July 22, 2014, plaintiff appeared and testified, as did a vocational expert by telephone. *See* AR 380-97. In a decision dated October 16, 2014, the ALJ again determined plaintiff to be not disabled. *See* AR 342-50. The Appeals Council did not assume jurisdiction of the case, making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1484. On May 21, 2015, plaintiff sought judicial review of that decision in this Court (*see* Dkt. 3), and on August 17, 2015, the Commissioner filed the administrative record (*see* Dkt. 9). As the parties have completed their briefing, this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or alternatively for further administrative proceedings, because the ALJ erred: (1) in evaluating the opinions of Suzanne Canning, M.D., and Kathryn Johnson, Ph.D.; (2) in assessing plaintiff's residual functional capacity; and (3) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in evaluating Dr. Johnson's opinion and therefore in determining plaintiff to be not disabled, but recommends that while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Social Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). The Court must determine whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (citation omitted).[1]

II.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

Where that evidence in is not conclusive, resolving such conflicts and ambiguities is solely the functions of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the medical evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. The Court itself may draw "specific and legitimate inferences from the ALJ's opinion" as well. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when such an opinion is contradicted, it "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need

REPORT AND RECOMMENDATION - 4

not accept a treating physician's opinion "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Based on a late January 2014 psychological evaluation, Dr. Johnson found plaintiff exhibited "numerous affective and vegetative symptoms of depression," presented "as a woman who has shut-down and lost the ability to function in most all areas of life" and was "most likely suffering from Somatic Symptoms Disorder." AR 543. Dr. Johnson further found plaintiff to be suffering from marked to extreme limitations in various mental functional areas, and concluded that her condition was "unlikely to improve in the near future." AR 543, 545-46.

As pointed out by the ALJ, Dr. Johnson "noted extensive abnormal findings." AR 346, *see also* AR 539-43. However, the ALJ did not find them "compelling because they are associated with poor effort" by plaintiff. AR 346. But Dr. Johnson's findings strongly indicate that the poor effort the ALJ notes stemmed from plaintiff's underlying mental impairment, and not from an attempt at malingering as the ALJ seems to suggest. *See* AR 542-43. The ALJ also noted that according to Dr. Johnson, testing results "likely underestimated [plaintiff's] memory function," which the ALJ stated was due her level of motivation and engagement being low. AR 346; *see also* AR 348. But this mischaracterizes what Dr. Johnson actually found:

> . . . The obtained results are believed to underestimate her memory capacity to some degree due to her extremely low energy level and limited ability to fully attend to tasks. Although she clearly put forth effort on some tasks and exhibited consistent behavior throughout the session, her motivation and

REPORT AND RECOMMENDATION - 5

engagement was low overall. . . .

AR 541. Again, these findings strongly indicate that whatever problems with motivation and/or engagement plaintiff exhibited, they were caused by – or at the very least linked to – her mental impairment and not a conscious effort to malinger.

Next, the ALJ rejected Dr. Johnson's opinion because:

> . . . much of [plaintiff's] purported difficulty attending to tasks during the examination was associated with her allegations of dizziness and other physical problems, which have never been substantiated by objective findings. For instance, [plaintiff] did not complete the Trails Tests due to reporting increased dizziness with nausea; she made gagging noises and went to the restroom (21F/3, 7). This presentation and other aspects of the consultative examination are not consistent with treatment notes.
>
> For instance, in contrast to Dr. Johnson's findings, treatment notes show that [plaintiff] was alert and oriented times four, with good eye contact and generally normal speech. Providers did not observe any indication that [she] had dizziness or nausea (23F/7, 9-12, 14, 16).

AR 347; *see also* AR 348. But the ALJ appears to misunderstand the nature of somatoform type disorders:

> [T]he essential features . . . are physical symptoms suggesting physical disorder, transience, somatoform, for which [sic] are no demonstrable organic findings or known physiological mechanism and for which there is positive evidence or a strong presumption that the symptoms are [linked] to psychological factors or conflicts. . . .

*Carr v. Sullivan*, 772 F.Supp. 522, 530 (E.D. Wash. 1991) (citation omitted); *see also Carradine v. Barnhart*, 360 F.3d 751, 761 (7th Cir. 2004) (somatization disorder defined as "the conversion of mental experiences or states into bodily symptoms") (quoting Dorland's Illustrated Medical Dictionary 1546 (27th ed.1988)); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989) ("Any shortcomings in the objective medical data that support [the claimant's] alleged physical ailments are irrelevant since her [somatoform] disorder, as clinically diagnosed, causes her to exaggerate her physical problems in her mind beyond what the medical data indicate."); *Teter v.*

REPORT AND RECOMMENDATION - 6

*Heckler*, 775 F.2d 1104, 1106 n.1 (10th Cir. 1985) ("Somatization is 'the conversion of anxiety into a physical disorder or physical symptoms.'") (quoting 3 J. Schmidt, Attorneys' Dictionary of Medicine S–116–17 (1985)).

That a claimant's physical complaints are not substantiated by objective clinical findings, therefore, does not alone call into question the existence of a somatization disorder or assessed limitations stemming therefrom. Further, not only do the treatment notes referred to by the ALJ contain allegations of dizziness and other physical ailments similar to those noted by Dr. Johnson (*see* AR 554, 558-60, 562-65, 568), but they also reveal at least some abnormal clinical findings, as well as a recognition that a somatization disorder was the cause of her symptoms (*see* AR 555, 560, 562-64, 566-68).

Citing *Chaudhry v. Astrue*, 688 F.3d 661 (9th Cir. 2012), defendant argues the ALJ was not required to accept all of plaintiff's subjective physical complaints despite the lack of objective evidence corroborating those complaints. In *Chaudhry*, the ALJ gave less weight to one examining physician's opinion because it was based primarily on the claimant's self-reported limitations. *Id.* At 671. Specifically, the physician erroneously believed the claimant had been prescribed a wheelchair, when that was not true. *See id.* The Ninth Circuit upheld the ALJ's rejection of that physician's opinion, because he "was undoubtedly influenced by the mistaken impression that the wheelchair was prescribed." *Id.*

The Court of Appeals also rejected the claimant's argument that the ALJ's determination that he lacked credibility was undermined by another physician's somatization disorder diagnosis, because that diagnosis too was based on the erroneous belief that the claimant was prescribed a wheelchair. *See id.* at 672. Thus, the Ninth Circuit found "[i]t stands to reason that the ALJ's finding that [the claimant] lacked credibility is not undermined by [that diagnosis,

REPORT AND RECOMMENDATION - 7

which itself] stemmed from [the claimant's] lack of credibility." *Id.* Here, though Dr. Johnson was not influenced by the same kind of mistaken impression that the physician was in *Chaudhry*, nor did the ALJ reject Dr. Johnson's opinion – or plaintiff's credibility for that matter – on that basis. Defendant's reliance on *Chaudhry* is therefore misplaced.

Lastly, the ALJ rejected Dr. Johnson's opinion because her findings were inconsistent with those of Dr. Canning, another examining medical source, noting further that "[un]like her presentation with Dr. Johnson, [plaintiff] did not stop testing with Dr. Canning due to reports of dizziness and nausea." AR 347. While it is true as noted above that it is the sole responsibility of the ALJ to resolve conflicts in the medical evidence, it is not at all clear – either from the record or from the ALJ's decision – why the ALJ gave more deference to the findings of Dr. Canning than to those of Dr. Johnson, other than for the already discredited reasons for discounting the latter's opinion discussed elsewhere herein. As for the difference in testing, unlike Dr. Johnson, Dr. Canning did not perform any. *See* AR 211-15. Thus, the fact that plaintiff did not present the same way in regard to such testing with Dr. Canning is irrelevant.[2]

II.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-

---

[2] Dr. Canning, as did Dr. Johnson, performed a mental status examination of plaintiff (*see* AR 213-14, 539-41), but did not administer the more formal psychological testing of memory that Dr. Johnson did, and during which plaintiff stopped the testing due to her reported physical complaints (*see* AR 541-43).

REPORT AND RECOMMENDATION - 8

related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's RFC is used at step four of the process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ in this case found that plaintiff had the RFC to perform:

> **. . . a full range of work at all exertional levels but with the following nonexertional limitations: she has the mental capability to adequately perform the mental activities generally required by competitive, remunerative work as follows. She can perform simple, routine tasks, and can follow short, simple instructions. She can perform work that needs little or no judgment, and can perform simple duties that can be learned on the job in a short period of less than thirty days. She can respond appropriately to supervision and co-workers. She can deal with occasional changes in the work environment that requires only occasional exposure to or interaction with the general public.**

AR 345 (emphasis in original). But because as discussed above the ALJ erred in evaluating the opinion of Dr. Johnson, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's capabilities. Accordingly, here too the ALJ erred.

III.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five the ALJ must show there are a significant number of

REPORT AND RECOMMENDATION - 9

jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ to the vocational expert. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's capabilities "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

At the hearing, the ALJ posed a hypothetical question containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. *See* AR 374-76. In response, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 349-50. Again, however, because the ALJ erred in evaluating Dr. Johnson's opinion and thus in assessing plaintiff's RFC, the hypothetical question also cannot be said to completely and accurately describe all of plaintiff's capabilities. Therefore, the ALJ's step five determination cannot be said to be supported by substantial evidence or free of error as well.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award

REPORT AND RECOMMENDATION - 10

benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled, and that it reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and

REPORT AND RECOMMENDATION - 11

Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 4, 2015**, as noted in the caption.

DATED this 16th day of November, 2015.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12